**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **EQUAL EMPLOYMENT OPPORTUNITY** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 11–1170 (RCL)** |
| | ) | |
| **RENT-A-CENTER, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff United States Equal Employment Opportunity Commission ("EEOC") brought

this action under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et*

*seq.*, alleging that defendant Rent-A-Center, Inc. ("RAC") discriminated against an employee,

Mr. Ferdinand Charles, by refusing to reasonably accommodate his religious belief which

prohibited him from working on Saturdays.   Now before the Court is RAC's motion for

summary judgment and attorneys' fees.   ECF No. 25.   Upon consideration of this motion,

EEOC's Opposition, ECF No. 27, RAC's Reply, ECF No. 28, applicable law, the record, and for

the reasons given below, the Court will GRANT RAC's motion for summary judgment,

DISMISS EEOC's complaint with prejudice, and DENY RAC's request for attorneys' fees.

I.      **BACKGROUND**

     **A.  Summary**

Mr. Charles worked for RAC for several years at various stores before being promoted to

Store Manager at RAC's Seat Pleasant, Maryland location in 2006.   Pl.'s Opp'n 2–3; Def.'s

Statement 4, ECF No. 25–1.  As was true of his earlier work for RAC, this position required Mr. Charles to work Saturdays.  Pl.'s Opp'n 3; Def.'s Statement 4; Dep. of Ferdinand Charles ("Charles Dep.") 62:13–15, 67:2–4, Pl.'s Ex. A, ECF No. 27–2 & Def.'s Ex. B, ECF No. 25–4. After several months working Saturdays, Mr. Charles informed RAC that his religious beliefs as a Seventh Day Adventist prevented him from continuing to do so.  Pl.'s Opp'n 1–2; Def.'s Statement 7; Charles Dep. 51: 5–18, 93–94.   Mr. Charles' supervisor, District Manager Ray Taylor informed Mr. Charles that RAC would not allow him to take every Saturday off, and Mr. Charles submitted his resignation.  Pl.'s Opp'n 3–4; Def.'s Statement 7.  Before his resignation was effective, however, another RAC District Manager, Monique Jones, offered to accommodate Mr. Charles' request, and brought him in as Store Manager at RAC's Alabama Avenue location in Washington, D.C. ("Alabama Ave. Store").  Pl.'s Opp'n 4; Def.'s Statement 7; Charles Dep. 94.  Beginning in September 2006, Mr. Charles worked as the Store Manager for this location and did not work Saturdays.  Def.'s Statement 7; Charles Dep. 95.  In November, RAC "realigned" its stores and Mr. Taylor became District Manager in charge of the Alabama Ave. Store.  Pl.'s Statement 7–8; Def.'s Statement 10.  Mr. Taylor discussed the issue of Mr. Charles' no-Saturday schedule with Regional Director David McNichol, who determined that RAC could not continue to accommodate Mr. Charles in this manner.  Def.'s Statement 11; Pl. Opp'n 7–9. Mr. Charles was terminated for refusing to work Saturdays in February 2007.  Pl.'s Opp'n 9; Def.'s Statement 12.

### B.  RAC's Business

RAC is in the rent-to-own business.  At its retail stores, customers select furniture, electronics, appliances, and other merchandise from the showroom floor, enter into rental agreements, and have the merchandise delivered to their homes.  Def.'s Statement 1–2; *see also*

Pl.'s Opp'n at 2–3. The rental agreements customers sign provide for weekly or monthly payments, and many of RAC's customers physically come into the store to make these payments. Def.'s Statement 2; Charles Dep. 107:13–20. The stores are leanly staffed: during the fall of 2006 while Mr. Charles was managing the Alabama Avenue store, it was fully staffed with six employees, including Mr. Charles. Def.'s Statement 1, 8; Charles Dep. 102:8–13.

### C. Store Managers

The Store Manager is the highest ranking employee at an RAC store, and is charged with special supervisory, training, financial, customer service and managerial responsibilities.[1] Pl.'s Opp'n 3, 5; Def.'s Statement 5; Charles Dep. 72–74, 108–09. In addition, certain tasks can only be performed by a Store Manager, such as awarding "free time" to customers,[2] authorizing reduced payments, and accessing certain "reports." Def.'s Statement 5–6; Charles Dep. 82–86; 115:4–13; Pl.'s Opp'n 7. While EEOC suggests that many managerial and supervisory functions could also be performed by an Assistant Manager, it does not contest the fact that certain functions can only be performed by the Store Manager. *See* Pl.'s Opp'n 5–7; 18–24**.**

### D. Saturdays

Saturday is the most important day of the week for RAC. Because RAC is closed on Sundays, it is the only weekend day that customers can physically come into the store to shop or make payments. Def.'s Statement 3. Most of RAC's rental agreements provide for payments to

---

[1] Mr. Charles acknowledged that, as Store Manager, he was "running the store," that he was "the highest ranking person in that store" and "all the employees in the store answered to [him]," that he was "responsible for managing all the employees below [him]," as well as "for scheduling," "for profit and loss for the store," "for managing [his] account managers to make sure they manage the customers," "for training," for "reviewing the account managers' work, reviewing my sales teamwork . . . for profit and loss, . . . for the inventory, . . . [and] for safety in the store . . . ." Charles Dep. 72–74.

[2] Mr. Charles explained that the store manager had exclusive authority over "free time" promotions: "if we had a promotion where you got pay a week, get a week free, the client needed two weeks free, and pay one week, I don't think [subordinates] were able to perform that." Mr. Charles further acknowledge that this promotion was a "tool to try to bring in new clients, new customers." Charles Dep. 84–85.

be made on Saturdays.   Def.'s Statement 3; *see also* Pl.'s Opp'n 6; *see also* Charles Dep. 113:14–16.   Accordingly, Saturdays are almost always the highest revenue-generating day of the week for RAC stores, including the Alabama Ave. Store.   *See* Alabama Ave. Store Financial Records, ECF No. 25–7 (reporting daily financial data for the Alabama Ave. Store over a two-and-a-half year period); Expert Report of Marshall L. Fisher 1, 4, ECF No. 25–11 (analyzing this data and concluding that "Saturday is by far the busiest day of the week, with more than one third of a week's business occurring on that day"); Dep. of Richard F. Tonowski 100:14–20, ECF No. 25–13 (acknowledging Dr. Fisher's conclusion as a "true statement"); *Id.* at 109:3–8 (agreeing that "Saturday is by far the busiest day for this store"); Def.'s Reply 1, 3 (noting that "Plaintiff does not dispute" this assessment).

### E.  RAC's Scheduling Policy

All RAC store employees work on Saturdays.   Def.'s Statement 4; *see also* Charles Dep. 62:7–12, 66:15–22; 67:1, 94:20–22.   In particular, because of their important role in the store, every Store Manager works on Saturdays.   Pl. Opp'n 9; Charles Dep. 129; Def's Br. 5; Def.'s Reply 1 (noting that "Plaintiff does not dispute [this claim] within its Statement of Genuine Issues and Material Facts in Dispute").

### F.  The Impact of Mr. Charles' Absences

The parties and their experts disagree as to what impact Mr. Charles' absence from the store on Saturdays had on RAC's business and employees.

RAC argues that the store "could not operate effectively on Saturdays" without Mr. Charles, Def.'s Br. 18–19; Def.'s Reply 2–5;[3] that Charles' coworkers and the District Manager had to take on "additional responsibilities" because of his absences, Def.'s Br. 21–24; Def's

---

[3] RAC's expert, Dr. Fisher concluded that Mr. Charles' absence on Saturdays led to a loss of $486 per week in revenues. Def.'s Br. 32 (citing Marshall L. Fisher, Expert Report, ECF No. 25–11).

Reply 5–8; that this accommodation interfered with RAC's business model, Def.'s Br. 24–28;

Def.'s Reply 9–15; and "lowered employee morale," Def.'s Br. 28–30; Def.'s Reply 15–16.

EEOC argues that "Charles' absence . . . on Saturdays did not disrupt the store's

operations" because the store had "satisfactory sales and profit and losses" during this period[4];

Charles' absence "did not impose additional duties upon his staff" or the District Manager;

Assistant Manager, Devon Pryor, was able to perform most of Mr. Charles' responsibilities as

Store Manager and the "staff was adequately supervised" during his absence; and employee

"morale at the store was not affected" because no employee complained about his absence.  Pl.'s

Opp'n 6–7, 18–24.

Notably, Mr. Charles appears to have made several concessions on these points during

his deposition testimony.  Mr. Charles agreed that "the store could not effectively operate on

Saturday without [him] if it was a busy day," but could do so "if it was a light day."  Charles

Dep. 114:8–13.  He further stated that when he was absent from the store on Saturdays, his

"coworkers had to do more than they normally would have, if [he] had been there," Charles Dep.

121:2–5, 122:5–8;  that, on Saturdays while he was absent, if there was "some function that

needed to be performed for which [his] subordinate employees" lacked the authority, the

employees would "either not be able to perform the function or they would have to call [District

Manager] Monique [Jones]," Charles Dep. 118:14–22; that, when he was absent on Saturdays,

his District Manager Monique Jones came in to fill in for him "[g]ive or take, I would say once a

month" during this period,  Charles Dep. 103:5–20; *see also id.* 125:12–22; and that while, to his

knowledge, other managers were not upset about the arrangement, "one manager in particular

made a joke about it, he said [']I need to join your church,['] you know," Charles Dep. 119.

---

[4] EEOC's expert, Dr. Tonowski, rejected the methodology used by Dr. Fisher, and showed that the decline in revenue predated the accommodation to Mr. Charles.  *See* Richard F. Tonowski, Rebuttal to Report Prepared by Marshall L. Fisher 4, ECF No. 27–8.

## II.     TITLE VII CLAIM

### A.     Legal Standard

#### 1.  Summary Judgment

Summary Judgment is "appropriate where the pleadings and the record 'show that there is no genuine issue as to any material fact and that the moving party is entitled to Judgment as a matter of law.'" *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 941 (D.C. Cir. 2007) (quoting *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1041 (D.C. Cir. 2003) (quoting Fed. R. Civ. P. 56(c))).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

#### 2.  Prima Facie Case

Title VII makes it unlawful for an employer, *inter alia*, "to discharge any individual . . . because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e–2(a)(1).  To state a prima facie claim, EEOC must show that Mr. Charles (1) "held a bona fide religious belief conflicting with an employment requirement"; (2) "informed [Rent-a-Center] of [his] belief"; and (3) was terminated "for failure to comply with the conflicting employment requirement." *See Isse v. Am. Univ.*, 540 F. Supp. 2d 9, 29 (D.D.C. 2008) (quoting *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 95 (D.D.C. 2006)).

#### 3.  Undue Hardship

If the plaintiff successfully establishes a prima facie case, "the burden shifts to the employer to show that it was unable reasonably to accommodate the plaintiff's religious needs without undue hardship." *Id.* (quoting *Lemmons*, 431 F. Supp. 2d at 95).  An employer must "reasonably accommodate" the religious needs of its employees unless the employer "demonstrates that [it] is unable to [do so] . . . without undue hardship on the conduct of the

6

employer's business."   § 2000e(j).   While "the employer's statutory obligation to make

reasonable accommodation for the religious observances of its employees, short of incurring an

undue hardship, is clear," *Trans World Airlines, Inc. v. Hardison* ("*TWA*") 432 U.S. 63, 75–76

(1977), Congress "did not impose a duty on the employer to accommodate at all costs." *Ansonia*

*Bd. Of Educ. V. Philbrook*, 479 U.S. 60, 70 (1986).   The Supreme Court has held that an

accommodation which causes anything "more than a de minimis cost" to the employer's

business constitutes an "undue hardship." *TWA*, 432 U.S. at 84.  An "undue hardship" may also

come in the form of costs on other employees. *Id.*

In *TWA*, the Supreme Court found no violation of Title VII where an employer declined

to make personnel and scheduling changes in order to allow an employee to avoid working at

times prohibited by his religion because all available actions would have caused an "undue

hardship" to the employer's business.  432 U.S. at 84–85.  The employer argued, and the Court

agreed, that leaving the Saturday shift empty would "have impaired [critical] functions."  *Id.* at

68–69.  The employer could have replaced the employee on the missed shifts with "supervisory

personnel," with "qualified personnel" from other departments, or with other available

employees through payment of "premium wages," but the Court found that all of these would

"involve costs to [the employer], either in the form of lost efficiency in other jobs or higher

wages," and thus constituted an "undue hardship."  *Id.* at 84.  The Court reasoned that any such

step would itself "involve unequal treatment of employees on the basis of their religion" by

requiring the employer to, in effect, "finance an additional Saturday off and then to choose the

employee who will enjoy it on the basis of his religious beliefs."  *Id.*

**B.**       **Analysis**

Assuming for purposes of this opinion that EEOC has stated a prima facie case, "the burden shifts to [RAC] to show that it was unable reasonably to accommodate the plaintiff's religious needs without undue hardship." *Isse*, 540 F. Supp. 2d at 9.   The issue presented is whether RAC has demonstrated beyond any "genuine dispute" that it could not accommodate Mr. Charles by allowing him to not work on Saturdays without incurring an "undue hardship" on the conduct of its business.  *See* 42 U.S.C. § 2000e(j); Fed. R. Civ. P. 56(c).

Three uncontested facts about RAC's business lead this Court to conclude that it has met its burden.

*First*, Saturdays are the most important day of the week in RAC stores.  As discussed above, the nature of RAC's business and clients, combined with the fact that it is closed Sundays, means that RAC stores are almost always busier on Saturdays than any other day, and the Alabama Ave. Store was no exception.   *See* Def.'s Statement 3; Alabama Ave. Store Financial Records; Fisher Report 1, 4.    Nor does EEOC dispute this.   *See* Tonowski Dep. 100:14–20, 109:3–8; *see also* Def.'s Reply 1, 3.   Indeed, Mr. Charles himself acknowledged Saturdays' importance in deposition testimony.  Charles Dep. 113:14–16.

*Second*, the Store Manager position is the most important position in the store.  As discussed above, this position is the highest ranking store employee, and comes with a variety of managerial and supervisory responsibilities, including several that belong exclusively to the position.  Pl.'s Opp'n 3, 5–7; Def.'s Statement 5–6.  Again, EEOC does not contest this point. *See* Pl.'s Opp'n 5–7; 18–24**.**   And, again, Mr. Charles acknowledged this point in deposition testimony, explaining that "the store could not effectively operate on Saturday without [him] if it was a busy day."  Charles Dep. 114:8–13; *see also id.* at 72–74, 82–86, 108–09, 115:4–13.

*Third*, RAC's general policy is to require all Store Managers to work Saturdays. Pl. Opp'n 9; Charles Dep. 129; Def's Br. 5.  This third fact reflects RAC's awareness of and focus on the first two facts: as a matter of policy, RAC requires its most important employees to be working on its most important day of the week.  Again, this fact is not contested by EEOC. Def.'s Reply 1.

In light of these three uncontested facts about RAC's business, the accommodation EEOC requests is for RAC to carve out an exception to its generally applicable scheduling policy and allow its *most important* employee at a particular store to be regularly absent on the *most important* day of the week at that store.  The Court will not require RAC to undertake the accommodation. Leaving the store without a Store Manager on Saturdays would cause an "undue hardship" to RAC by "impair[ing] [critical] functions"—it would deprive the store of the significant supervisory, managerial, customer-care and other functions that RAC Store Managers are charged with at the very time when these functions are most needed.  *See TWA*, 432 U.S. at 68–69.  Because of the importance of the position, the centrality of Saturdays in RAC's weekly cycle, and of RAC's scheduling policy reflects these two facts by requiring all Store Managers to work on Saturdays, this Court is satisfied that the evidence shows that leaving the position blank on Saturdays imposes "more than a de minimis cost" on the conduct of RAC's business.  *TWA*, 432 U.S. at 84.

The three uncontested facts make the accommodation requested in this case even more of an "undue hardship" on the employer than what was previously deemed adequately burdensome by Judge Joyce Hens Green in *Rasch v. Nat'l R.R. Passenger Corp.*, 1991 WL 221270 (D.D.C. Oct. 11, 1991).  Judge Green rejected the suggestion that a railroad employer "could accommodate [an employee's] religious needs without incurring undue hardship by 'blanking'

his position on his Sabbath days—that is, not requiring [him] to work . . . and not obtaining a substitute . . . ." *Id.* at *5. Judge Green noted that the employer "does not regularly blank positions even though it may save money by doing so" and concluded that "blanking the position would create an undue hardship." *Id.* at *5. Whereas in that case, Judge Green found "undue hardship" in "blanking" what was essentially an *ordinary* position on an *ordinary* shift, here Mr. Charles asks RAC to routinely "blank" the most important position in the store on its most important day of the week. Such an accommodation would not merely be "bothersome to administer or disruptive of the operating routine," *Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1086 (6th Cir. 1987), but actually would *squarely conflict* with RAC's business model. That is more than sufficient to demonstrate "undue hardship."

This conclusion is not upset by the fact that RAC's expert testimony purporting to quantify the cost of Charles' absences may be insufficient to prevail on summary judgment. *Compare* Fisher Report 4–6, *with* Tonowski Report 4. Conclusive empirical support is not required for an employer to show "undue hardship." Courts have held that an employer need not even actually attempt the requested accommodation. *TWA*, 432 U.S. at 84–85; *see also Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 500–01 (5th Cir. 2001). Even those courts that have been skeptical about crediting an employer's assertion of "hypothetical" harms have not insisted that an employer *must* in every case first implement the accommodation before claiming "undue hardship." *See, e.g.*, *Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397, 401 (9th Cir. 1978); *Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975). That an employer need not experience the "undue hardship" entails that it cannot be obligated to demonstrate that harm with empirical data. Here, the Court finds that the three uncontested facts listed above—that Saturdays are RAC's most important day, that the Store Manager is the most

important employee at any given RAC store, and that all RAC Store Managers work Saturdays— provide sufficient evidence to conclude that the proposed accommodation would cause an "undue hardship" to RAC's business. The status of RAC's attempted empirical demonstration of that harm does not affect that determination.

Because the Court has found an "undue hardship" through direct harm on RAC's business, it need not go further to consider RAC's alternative arguments that the proposed accommodation causes an "undue hardship" by imposing additional responsibilities on Mr. Charles' coworkers and supervisors, or by injuring employee morale.[5] *Compare* Def.'s Br. 21–24, 28–30, *and* Def.'s Reply 15–16, *with* Pl.'s Opp'n 6–7, 18–24.

## III.   ATTORNEY'S FEES

RAC also seeks an award of attorneys' fees. A prevailing defendant under Title VII may be entitled to such an award if plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). The EEOC may be held "liable for costs the same as a private person." 42 U.S.C. § 2000e–5(k). And, "a district court may consider distinctions between the

---

[5] The Court notes that there appears to be a split as to how readily to recognize such harm. *Compare Draper*, 527 F.2d at 520 (finding no undue hardship from a proposed shift-substitution accommodation where "there [wa]s little or no proof that the other employees would object at all," and noting that "[i]deally, the substitution would be effected on a voluntary basis" but even "[i]f not, the [employer] could rotate the assignment among several electricians so that the burden would not fall heavily upon any particular employee."), *Burns v. S. Pac. Transp. Co.*, 589 F.2d 403, 407 (9th Cir. 1978) (finding no undue hardship from a proposed accommodation to allow an individual to pay the equivalent of his union dues to private charity because the financial loss to the union could be made up for simply by collecting additional dues from "the Local's 300 members at a rate of 2 cents each per month."), *and Haring v. Blumenthal*, 471 F. Supp. 1172, 1179–82 (D.D.C. 1979) (finding no undue hardship from a proposed accommodation whereby an IRS reviewer would not work on certain cases constituting 2% of the total volume because these "could clearly be processed without undue hardship or burden to the Service, or any significant expense or loss of time, by another reviewer"), *with EEOC v. Firestone Fibers & Textiles Co.* 515 F.3d 307, 318 (4th Cir. 2008) (finding lowered morale among co-workers caused by "the sting of unfairness" of special treatment might cause "real problems in a workforce" and emphasizing that "evenhandedness and fairness are of paramount importance to the functionings of any workplace"), *and Aron v. Quest Diagnostics Inc.*, 174 F. App'x 82, 83 (3d Cir. 2006) (per curiam) (holding that a proposed accommodation would constitute an undue hardship in part because it "would result in unequal treatment of the other employees and negatively affect employee morale").

Commission and private plaintiffs in determining the reasonableness of the Commission's litigation efforts." *Christianburg Garment*, 434 U.S. at 422 n.20.

The Court concludes that EEOC's efforts were not unreasonable.   Decades after Congress added the language to Title VII, the standard for what constitutes an "undue hardship" remains murky.   Our circuit has not elaborated on the precise contours of the term and there appears to be some degree of disagreement among the circuits as to how liberally to construe the term along several dimensions.   *Compare EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 318 (4th Cir. 2008) (adopting a liberal approach to what constitutes an "undue hardship"), *Bruff*, 244 F.3d at 500–01 (same), *and Aron v. Quest Diagnostics Inc.,* 174 F. App'x 82, 83 (3d Cir. 2006) (per curiam) (same), *with Anderson*, 589 F.2d at 401 (adopting a more restricted approach), *and Draper*, 527 F.2d at 520 (same).   Accordingly, although EEOC's claim must fail, it was not "frivolous, unreasonable, or groundless" for them to pursue it, thus attorneys fees will not be awarded. *See Christiansburg Garment*, 434 U.S. at 422.

IV.   **CONCLUSION**

For the foregoing reasons, RAC's motion for summary judgment will be GRANTED, the case will be DISMISSED with prejudice, and RAC's motion for attorneys' fees will be DENIED.

An Order shall issue with this opinion.

Signed by Royce C. Lamberth, Chief Judge, on January 18, 2013.